1. Were the plaintiff's goods destroyed by the negligence of the defendant? Answer: "Yes."
2. If so, what damage are plaintiffs entitled to recover? Answer: "$150."
From the judgment rendered defendant appealed.
The evidence tends to prove that plaintiff was employed by defendant as an assistant coal heaver at its coal chute at Cliffs, a station on Catawba River. By permission of defendant, plaintiff and his family occupied as a residence two unused shanty cars located on a side track near the chute. They lived in the cars with their household effects from 1 May to 16 July, 1915. On that night an unprecedented flood swept over the banks of the Catawba, submerged the shanty cars and destroyed plaintiff's property therein.
The evidence shows that during the day of the 16th, before the water reached the track on which the shanties were located, a freight train in charge of Conductor Winkler passed Cliffs going towards Hickory. Nothing was said to Winkler by the plaintiff Matthews or by Askew, his foreman, about moving the cars. After the freight train passed in the afternoon, Askew, plaintiff's brother-in-law, phoned the defendant's shops at Hickory and requested that an engine be sent out to move the shanty cars. At that time the water had not reached the shanties. He was told that there was only one engine there, and that had to (36) be held on account of a washout on the line at another point. It had required Winkler from 2:30 until 6 o'clock that same afternoon to get his train from Cliffs to Hickory, a distance of two or three miles.
The Court overruled a motion to nonsuit, which is assigned as error. The exception is well taken. We know of no principle of law that imposed upon the defendant the legal duty to protect and rescue plaintiff's chattels from the destructive consequences of an act of God.
The plaintiff was occupying the shanty cars as a residence by *Page 39 
permission of defendant. His relation to defendant was that of a servant who has brought his effects upon the master's premises by his permission, the servant retaining personal control of his property. The law imposes no duty upon the master to rescue his servant's goods from the consequences of a destructive agency for which the master was in no way responsible. The cause of the destruction was the act of God and not that of the master. Labbatt, 15.
The rule is thus stated by the Georgia Court in Allen v. Hixon,36 S.E. 810: "When an employee, without fault on the master's part, becomes placed in a dangerous or painful situation, the master is under no positive legal duty of exercising all reasonable care and diligence to effect such employee's speedy release. Being in no way responsible for the unfortunate occurrence, the master cannot be said to be guilty of a tort if he does not promptly take active steps in coming to the rescue. The only duty arising under such circumstances is one of humanity, and for a breach thereof the law does not, so far as we are informed, impose any liability." 24 Cyc. 1072 and notes, and note to 42 L.R.A., 363 (N.S.).
To illustrate: Suppose plaintiff had been a farmer's tenant residing in a tenant house on the banks of the Catawba, and when the flood began to rise he had telephoned his landlord to bring his team and remove his household goods, and the landlord had failed to do so. Would the landlord be liable? Certainly not. The law imposed no such duty on him, although humanity did. Causes of action arise only for violations of duties imposed by municipal law. Unfortunately for plaintiff, he failed to have his cars attached to Winkler's freight train, as he could have done; and when he phoned to Hickory for help, the defendant's only engine there was necessarily detained to meet another pressing demand. Had this not been so, we doubt not that it would have been sent to plaintiff's relief.
The position that defendant may be held as a bailee of the household goods is untenable. Possession and control are essential elements in the law of bailment. The defendant was not in possession of the goods simply because they were in its shanty cars any more than a landlord would be in possession of his tenant's household effects simply because he had furnished the tenant a house to live in. 6 Corpus Juris., 1102.
The motion to nonsuit is allowed.
Reversed.
Cited: State v. Hall, 224 N.C. 321. *Page 40