37787. CITY WHOLESALE COMPANY *v.* HARPER, Administrator, *et al.*

DECIDED SEPTEMBER 9, 1959.

*Cumming & Cumming,* for plaintiff in error.

*Beck, Goddard & Smalley, Christopher & Futral,* contra.

CARLISLE, Judge. (After stating the foregoing facts). A decision of the question which was presented to the trial judge under the foregoing stipulations of fact, and which is presented to this court by the exception to his judgment, requires, as was said by the trial judge, an interpretation and construction of the act of 1937 (Ga. L. 1937, p. 760). The pertinent provisions of this act are sections 1 and 2, which read as follows:

"Section 1. That the notice given to third persons by the filing for record of any mortgage, bill of sale to secure debt, retention of title contract or other security instrument creating a lien on, retaining title to, or conveying an interest in, personal property, shall expire at the end of seven years from the date of the filing thereof for record.

"Section 2. The effect as to third persons of the filing of any such instrument for record, may, in all respects, including the preservation of priority thereof, be extended for successive additional periods, each not exceeding five years from the date of the filing in the office of the clerk of the Superior Court, wherein any such instrument is recorded, upon the filing by the owner or holder thereof, of an affidavit identifying such instrument, stating his interest and the nature and amount unpaid on the obligation still secured thereby."

In interpreting this act, the court should look diligently to the intention of the General Assembly, keeping in view at all times the old laws, the evil and the remedy. Code (Ann.) § 102-102 (9). Let us then look to the condition of the law with respect to the recordation of deeds and bills of sale to secure debt, prior to the enactment of the 1937 act, especially with relation to the effect of such recordation as respects third parties. In reading the law, it may readily be seen that there is nothing mandatory in the law which requires that the grantee of a deed or a bill of sale to secure debt have it recorded. It is purely a permissive matter whether the grantee shall record his instrument or not, notwithstanding that the acts state that such instrument "shall be recorded." The word *"shall"* as there used is merely directory as to the place where such instruments may be recorded, if at all. The effect or recordation of conveyances to secure debt is by the law relating thereto made the same as the effect of the recordation of deeds of bargain and sale. Code § 67-1305. In Code § 29-401, the effect of recording deeds of bargain and sale is stated negatively, in that it provides that, "the record may be made at any time but such deed loses its priority over a subsequent recorded deed from the same vendor taken without notice of the existence of the first." From this wording and from the various interpretations

and applications thereof by the courts, it may be safely deduced that the sole purpose and effect of recordation of both deeds of bargain and sale and of deeds and bills of sale to secure debt insofar as third parties are concerned, is to afford such third parties constructive notice of the existence of such deed. *Cammon* v. *State,* 20 *Ga. App.* 175 (1) (92 S. E. 957). Insofar as priority between deeds or bills of sale to the same property from the same grantor are concerned, constructive notice as afforded by its proper recordation is sufficient. *McElwaney* v. *MacDiarmid,* 131 *Ga.* 97 (3) (62 S. E. 20). Likewise, as affects the priority between such instruments, if actual notice on the part of the junior grantee be shown, the senior instrument is prior, notwithstanding it may not have been recorded. *Gardner* v. *Grannis,* 57 *Ga.* 539 (10).

From these and other decisions, we may readily perceive that the scheme of the law is and has always been that the older instrument is prior to the later one, and that the only way such priority may be lost is by a showing that the later instrument was taken without notice, either actual or constructive of the existence of the earlier instrument. Again, as a corollary proposition, it necessarily follows that insofar as this priority is concerned, the sole effect of recordation of deeds of bargain and sale and of conveyances to secure debt is to afford to the junior grantee the constructive notice above referred to at the *time* such junior grantee takes or contemplates taking the conveyance from the common grantor. Once the junior grantee has been afforded this notice, the record of the senior conveyance serves no other purpose insofar as he is concerned. At the time he takes his conveyance, in the face of such outstanding recorded conveyance the respective priorities between the two conveyances are fixed, and no subsequent event can change that relation. Prior to the Act of 1937, once a mortgage, bill of sale to secure debt, retention-of-title contract or other security instrument creating a lien on, or retaining title to, or conveying an interest in, personal property was filed for record, such filing and entry on the records by the clerk of the court constituted notice to all subsequent grantees, regardless of the length of time that had elapsed after such filing and recordation.

Such being the state of the law prior to the questioned act, what was the effect of section 1 of the Act, insofar as it affected the existing law? This section merely provided that such *notice* would expire at the end of seven years from the date of the filing of such instruments for record. Standing alone, this section merely took from the law the provision that such filing would be notice after the expiration of seven years—nothing more. It did not, in any sense, purport to alter the law as outlined above with respect to the fact that once such notice had been afforded, the respective priorities of the junior and senior instruments were fixed. This section merely had for its purpose the relieving of the party taking the junior conveyance of the necessity of searching the records more than seven years back. After this section was enacted if a junior grantee made a proper search of the records for the preceding seven years and found nothing, and if he had no actual notice of an outstanding conveyance and accepted his conveyance and promptly put it on record, he would be protected insofar as the priority of his conveyance was concerned with respect to the senior conveyance. Section 2 of that act then proceeds to afford to the senior grantee the means whereby he might preserve or restore his priority, and the effect of the record of his instrument as *notice* to *subsequent grantees* by filing with the clerk an affidavit setting forth therein the matters specified in that section.

The evil of the old law which the General Assembly sought to remedy by the enactment of this law was aptly stated by the trial judge, as follows: "It is a matter of common knowledge, certainly among lawyers and court officials, that rarely were liens upon personal property, once recorded, ever cancelled of record, and that the recording records in the counties of this State had become filled with such liens which had been upon the records for many years. In many instances title to such personalty had passed, by delivery, into the hands of several owners and it had become almost impossible for a careful creditor, who anticipated taking a lien, to determine which liens had been satisfied and which were still valid." It is manifest that the intention of the legislature was to change the law only so as to eliminate the evil of having outstanding on the lien

records of the various counties mortgages and bills of sale to secure debt and other conveyances to secure debt which, in effect, were dead and no longer outstanding, and to provide for their automatic cancellation of record at the end of seven years, unless appropriate action was taken by the holder of such instrument to preserve its effect as a conveyance of record.

Under the foregoing interpretation of the law, the respective priorities of the bills of sale to secure debt executed by Kelley first to Dorsey and almost seven years later to City Wholesale Company was fixed at the time that City Wholesale Company took its instrument. At that time, City Wholesale Company had constructive notice of the existence of Dorsey's bill of sale, and the subsequent failure of Dorsey to file the affidavit as provided for by Section 2 of the act, could have had no effect on the established priority between the two instruments. It follows that the ruling and judgment of the trial court, declaring that the bill of sale to Dorsey was prior to that held by City Wholesale Company and in ordering and decreeing that the $1,800 be paid over to Dorsey as administrator of the estate of C. R. Dorsey was correct.

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*